IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

KELLY KIRKENDALL-HELLER,
individually and as Special Administrator for
the Estate of
KRYSTEN MISCHELLE GONZALEZ,
deceased,

    Plaintiff

v.

BOARD OF COMMISSIONERS OF
OKLAHOMA COUNTY;
P. D. TAYLOR, individually; and
TURN KEY HEALTH CLINICS, LLC,

    Defendants

Case No. CIV-21-11-F

## COMPLAINT

COMES NOW the Plaintiff, and for her cause of action against the Defendants LLC named herein and states:

### PARTIES, JURISDICTION AND VENUE

1. This case involves the wrongful death of Krysten Mischelle Gonzalez while under the care of the Defendants who owed a Constitutional duty to the decedent while under their care.

2. This case arises from the failure to provide proper medical care and/or assessment of Ms. Gonzalez while housed at the Oklahoma County Detention Center.

3. The Defendant Board of Commissioners of Oklahoma County is a subdivision of the State of Oklahoma and has a statutory duty to operate the Oklahoma County Detention

Center during Ms. Gonzalez's containment.

4. That Defendant P. D. Taylor was, at all times relevant to this Complaint, the duly elected sheriff of the Oklahoma County Sheriff's Office.

5. That Defendant Turn Key Health Clinics, LLC was under contract with the Oklahoma County Detention Center to provide health care to detainees at all relevant times.

6. That each of the Defendants were acting under the color of state law and deprived the decedent Gonzalez of her Constitutionally protected rights.

7. This action is brought pursuant to 42 U.S.C. § 1988; the Eighth and Fourteenth Amendments to the United States Constitution and all other relevant common law and statutory laws of the United States and the State of Oklahoma.

8. That this Court has jurisdiction over federal law claims and parties pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because this case presents federal questions and involves the deprivation of civil rights arising under the United States Constitution.

9. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court under 28 U.S.C. § 1392(b) because the acts complained of occurred in Oklahoma County, Oklahoma, which is located in the Western District of Oklahoma. The Plaintiff is next-of-kin of the decedent and was appointed as the Special Administrator of the Estate of Krysten Mischelle Gonzalez the District Court of Oklahoma County, Oklahoma, Probate Division, Case No. PB-2020-1364 for the specific

purpose of pursuing this action in regard to the death of Krysten Mischelle Gonzalez on January 8, 2019

11. Krysten Gonzalez was booked into the Oklahoma County Detention Center in October of 2018. This booking was related to her failing to appear after being adjudicated and assigned to Mental Health Court due to her mental health issues. Krysten Gonzalez, a military veteran, was owed a Constitutional duty to provide appropriate mental health care and designation while housed at the OCDC, which did not occur.

12. On January 8, 2019, Krysten Gonzalez was found hanging by a bed sheet in her cell, which she had been assigned to alone, while incarcerated at the Oklahoma County Detention Center. The medical examiner's office ruled the manner of death suicide as a result of hanging.

13. The Oklahoma County Detention Center has an extensive history of being notified by the U.S. Department of Justice that their medical and mental health care services are inadequate.

14. The U.S. Department of Justice, on multiple occasions, has notified the Oklahoma County Detention Center that their facility and cells include designs and construction that provide opportunities for detainees to tie ligatures to the structures in their cells to commit suicide.

15. On August 13, 2008, the U.S. Department of Justice provided the following opinions:

That the Detention Center is overcrowded, which can tax the jail's oversight of inmates; blind spots in the cells and other areas prevent adequate supervision of detainees; the Center is under-staffed, which exacerbates the problem of oversight of inmates; the "jail does not have enough available cells to match the classification level in a way that meets acceptable standards of correctional practice;" housing facilities for potentially suicidal detainees do not include necessary safety features; the cells in general population also contain bunks and grates that allow detainees to tie ligatures to the structure in order to commit suicide; inadequate mental health services, including a failure to provide adequate psychiatric services.

16. On April 25, 2012 the U.S. Department of Justice issued an additional audit and made the following findings:

The Detention Center is not in compliance with medical care and mental health care; repeated the structural suicide risks in the detention center cells, including how bunks are bolted to walls and that the facility has removable ceiling tiles; that their deficiencies contribute to harm, including deaths; that the number of detainees with mental health issues overwhelm the psychiatrist's ability to address detainees' needs; that there is an inadequate number of trained mental health staff; that the Detention Center had an instance of a detainee with a history of depression and prior suicide attempts who was not referred to mental health and was placed in a single cell; single cells are not recommended for suicidal or depressed persons because they provide the means and opportunity for detainees to hang themselves;

the 2012 report also identified a similar detainee hanging himself during their review in that relevant time period as well.

17.     In December of 2016 the Board of Commissioners of Oklahoma County asked the Vera Institute to audit the jail and provide a report.

18.     The Vera Institute report found that the County did not have the resources to provide adequate mental health resources for offenders with mental health concerns; 12% of the population in 2016 were identified as having serious mental health issues and that figure is likely underestimated, according to Vera; and, in 2016, five out of the 11 deaths at the Detention Center were by suicide.

19.     On October 29, 2017, while still under the U.S. Department of Justice's supervision, the Oklahoma County Detention Center rejected the U.S. Department of Justice from inspecting and auditing their facility to evaluate the remaining concerns, which included mental health care provided to detainees.

20.     Defendant P. D. Taylor has been quoted as stating "if someone really wants to kill themselves, there is not much anybody can do about it because the ones who are serious about it, they just do it," which shows his deliberate indifference to detainees to whom he owes a Constitutional duty to provide mental health care.

21.     The Oklahoma County Detention Center stated in an article discussing Gonzalez's death that they limit their inmates with mental health issues to roughly a dozen inmates who can be assigned to the mental health ward. The mental health ward is where

detainees with serious mental health issues, including depression and past suicide attempts, can receive additional care, monitoring and specialized cells to prevent suicides from occurring. Krysten Gonzalez, with observable signs of suicide attempts, reports of mental health issues (depression, anxiety and PTSD) and previous hospitalizations, should have been, at a minimum, housed in the mental health ward.

22. The Detention Center has a policy of housing other inmates with mental health care issues in the general population due to this limited space. This reduces the sight checks, places them in cells that provide more opportunities to successfully commit suicide, and limits the mental care services the detainees are provided. These deficiencies are cited by the U.S. Department of Justice reports on more than one occasion.

23. The dozen spots for detainees with serious mental health care issues are severely deficient. The Vera Institute Report indicated 12% of the population at the Oklahoma County Detention Center (which has been reported as upwards of 2000 detainees) had serious mental health issues. This number, which at 2000 detainees would reach 240, greatly exceeds the number of inmates who should be in a mental health care ward classification compared to the number of beds available to these inmates.

24. The Board of Commissioners of Oklahoma County and P. D. Taylor were aware that the facility's mental health care services and mental health care areas were inadequate starting in 2008 and persisted in an additional report in 2012 as a previously identified deficiency and continued in the Vera report in 2016. Additionally, the statements

by the Oklahoma County Detention Center spokesperson stating that they only designated roughly a dozen beds for mental health care detainees shows that they continued to disregard the U.S. Department of Justice's reviews and the Vera Institute's review citing these deficiencies for over 11 years prior to Krysten Gonzalez's suicide.

25. Krysten Gonzalez had previously been admitted into Mental Health Court related to her criminal charges. Court records and medical records show that Krysten Gonzalez had a history of depression, anxiety and post-traumatic stress disorder prior to her incarceration.  This information was reported to the Detention Center staff and Turn Key Health Clinics, LLC, at her booking.

26. The medical examiner's report notes that Krysten Gonzalez made multiple attempts at taking her life, as indicated by significant scarring on her arms and thighs.  These objective and observable signs of previous attempts were seen and observed by Detention Center staff and Turn Key Health Clinics, LLC staff.

27. Krysten Gonzalez had been involuntarily committed on two prior occasions.

28. Inadequate assessment by properly trained mental health care workers, based upon this history and observable signs of previous suicide attempts, show that Krysten Gonzalez should have been placed in the mental health care ward.

29. The Detention Center, despite being notified in 2008, and on two other occasions, that their facilities needed additional mental health care cells, placed Krysten Gonzalez in the general population.

30. Despite being told that individuals with mental health care issues should not be placed in a single cell, Krysten Gonzalez was placed in a cell, by herself, on January 8, 2019.

31. Despite being told on multiple occasions that their cells were designed and constructed in a way that provided an opportunity for detainees to tie a ligature around their neck to commit suicide, Krysten Gonzalez's cell had not been corrected to remove those risks and Krysten Gonzalez was able to hang herself by a bed sheet while placed alone in the single cell.

32. The Defendant had been told on multiple occasions that their under-staffing, which persisted in 2019, and their inadequate video monitoring system prevented staff from adequately supervising and monitoring inmates, which is a known tool to help prevent suicides.

33. Statements by P. D. Taylor, the Board of Commissioners of Oklahoma County, independent reviewers and the U.S. Department of Justice all indicate that the Oklahoma County Detention Center is over-populated, under-staffed, and under-funded. There have been multiple discussions and proposals for either remodeling or building a new facility in order to fully comply with the U.S. Department of Justice's statements that the facility is inadequate, including inadequate design inside the cell, inadequate design of the video systems, inadequate cells for classifications of inmates, including mental health inmates, and unsanitary conditions, all of which demonstrate a pattern and practice of maintaining a

Detention Center that does not match correctional standards for providing Constitutional protections to detainees, including Krysten Gonzalez. In response to questions about the housing of mental health court participants, the Oklahoma County spokesperson stated that "this building is not designed to house these kind of inmates to begin with." An Oklahoma County Commissioner stated that "funding is the biggest issue." As such, Oklahoma County Special Judge Gerry Walke has ruled that the Oklahoma County Detention Center is not fit to house inmates who are in the Mental Health Court program due to these deficiencies.

34. The issues that led to the Detention Center being ordered to no longer house the mental health court detainees are related to issues that have been known and repeatedly identified to the Oklahoma County Detention Center, the Board of Commissioners of Oklahoma County, and P. D. Taylor since at earliest 2008 and reiterated on multiple occasions leading up to Krysten Gonzalez's death.

35. Due to these known deficiencies, the Oklahoma County Detention Center failed to properly classify and perform adequate and effective sight checks for Krysten Gonzalez, who should have been in a mental health ward and not the general population due to her prior suicide attempts, prior involuntary hospitalizations, reported history of depression, anxiety and PTSD that was known to the Oklahoma County Detention Center and its staff and Turn Key Health Clinics, LLC employees.

36. Turn Key Health Clinics, LLC is contracted to assist the Oklahoma County Detention Center in classifying inmates with serious mental health needs. Turn Key, in

performing its duties, permitted and participated in the policy and procedure that only 12 or so inmates would receive classifications to the mental health ward. Turn Key, being in the business of providing correctional health care, knows that a jail population with 12% of its population having serious mental health needs should have been classifying and housing more than roughly 12 inmates with those mental health care needs in areas that provided the appropriate care, limited means to attempt suicide (including no bed sheets in cells) and appropriate sight checks. Despite this knowledge, they acquiesced and were complicit in carrying out the unconstitutional policy that the Department of Justice stated could lead to harm to detainees, including death.

37. Turn Key Health Clinics, LLC's employees were aware that Krysten Gonzalez's history included suicide attempts and failed to classify her, despite the restrictions in housing, as a priority to be placed in the mental health care ward, which resulted in a deliberate indifference to her needs. This policy and practice of picking and choosing which inmates are lucky enough to be provided the limited bed space for mental health care needs violated Krysten Gonzalez's Constitutional rights to receive necessary mental health care services and placement, which is a recognized Constitutional protection for detainees.

38. The U.S. Department of Justice's findings specifically included statements that these deficiencies did not meet acceptable correctional standards and would "contribute to harm, including deaths."

39. The U.S. Department of Justice determined that the number of detainees with

serious mental health care needs overwhelmed the jail's one psychiatrist's ability to address these detainees' needs. There have been no reports stating that this deficiency in the number of psychiatrists, or reduction in the number of mental health care inmates, was ever corrected. It is believed that Turn Key Health Clinics, LLC, instead of providing a sufficient number of psychiatrists, as identified by the U.S. Department of Justice, staffed these roles with individuals who did not meet the qualifications as set forth by the U.S. Department of Justice, who identified that psychiatrists were needed to perform these roles.

40.     P. D. Taylor was an employee of the Oklahoma County Detention Center before he became the sheriff in 2017.

41.     P. D. Taylor was involved in reviewing and/or assisting the review of the U.S. Department of Justice's findings prior to becoming the sheriff in 2017 and was aware of all the findings of the 2008 report, 2012 report and the Vera Institute 2016 report when he assumed the duties in 2017.

42.     P. D. Taylor failed to correct the mental health care deficiencies, cell deficiencies, classification of inmate deficiencies, correctional facility design deficiencies and the inadequate number of psychiatrists for detainees, all of which combined and contributed to Krysten Gonzalez being provided the opportunity to hang herself in a single cell in January of 2019 while he was the acting sheriff.

43.     P. D. Taylor additionally signed off on the policy and practice of picking and choosing only the inmates with the most extreme mental health care needs to be placed in the

roughly 12 mental health care cells as stated by the Oklahoma County spokesperson.

44.     P. D. Taylor has acknowledged, in statements to the press and to the Board of Commissioners of Oklahoma County, that the jail is under-staffed and under-funded and that the facilities are inadequate for the demands that the number and types of detainees place on the Oklahoma County Detention Center. By continuing to operate the Detention Center in this manner, P. D. Taylor knew with substantial certainty that inmates would be able to commit suicide while under their care and supervision, which is evidenced by his statement that "you cannot prevent all suicides" at his jail.

45.     The Defendants, individually and in concert, had knowledge of and were deliberately indifferent to the following:

      A.  The U. S. Department of Justice, and independent investigations that occurred prior to the death of Gonzalez had brought to light the unconstitutional practice and custom occurring at the Oklahoma County Detention Center.

      B.  The U. S. Department of Justice investigations prior to the death of Gonzalez showed that the Oklahoma County Detention Center and other county officials, including P. D. Taylor, the Board of Commissioners of Oklahoma County, and Turn Key Health Clinics, LLC administrators, failed to adequately staff mental health care providers, supervise and provide policies and procedures to insure that

      the medical and psychological needs of its detainees, including Gonzalez, were met and that the policies and procedures complied with the United States Constitution.

C.    The Defendants' continued practice and custom to refuse to follow the recommendations of the U.S. Department of Justice's identification of the acceptable standards of correctional practice and failed to provide their own recommendations for sufficient funding, new facilities or remodel facilities, and the appropriate number of staffing, which contributed to the inadequate and improper medical and psychological treatment for inmates, including Gonzalez, at the Oklahoma County Detention Center.

D.    The Defendants acts and omissions created a known substantial risk of serious and deadly harm to Gonzalez and other inmates, which will be shown by the records of the U.S. Department of Justice, the Oklahoma County Detention Center, the Board of Commissioners of Oklahoma County, Turn Key Health Clinics, LLC, and their accompanying investigations prior to, and after, the death of Gonzalez. News reports indicate that since Gonzalez's hanging, there have been four additional suicides at the Oklahoma County Detention Center, two of which have been confirmed as hanging inside a cell. Two of these occurred in 2019

and two occurred in 2020, which demonstrates the continued deliberate indifference to the mental health detainees under the Defendants' supervision and control, and continued deficiencies that caused Krysten Gonzalez's death.

E. Krysten Gonzalez's death would have been prevented had the Defendants implemented the U.S. Department of Justice's recommendations and had the Defendants followed their own recommendations regarding staffing needs, correcting building deficiencies and/or building a new correctional facility that provided adequate housing for mental health care inmates. Defendants Board of Commissioners of Oklahoma County, P. D. Taylor and Turn Key Health Clinic, LLC's deliberate indifference to the supervision and oversight of the Oklahoma County Detention Center detainees proximately led to Gonzalez's death.

F. The acts of all Defendants collectively occurred under the color of law and amounted to violations of Gonzalez's Eighth and/or Fourteenth Amendment rights.

G. The Defendants Board of Commissioners of Oklahoma County, P. D. Taylor and Turn Key Health Clinic, LLC's and other administrative elected officials, appointees, and employees, were aware that since

2008 the Defendants had engaged in a practice and custom of not properly assessing inmates psychologically and failing to properly supervise and train staff to deal with the medical and psychological issues of detainees, all of which were the direct cause of Gonzalez's death.

## COUNT I

**VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION PROVIDING REMEDIES PURSUANT TO 42 U.S.C. § 1983**

46.   Plaintiff realleges and incorporates by reference every fact and allegation contained in paragraphs 1 through 45, supra, as if set forth fully herein.

47.   Defendants Board of Commissioners of Oklahoma County, P. D. Taylor and Turn Key Health Clinic, LLC were responsible for providing adequate safekeeping, supervision, medical and psychological care to the inmates in the custody of the Oklahoma County Detention Center. The Board of Commissioners of Oklahoma County and P. D. Taylor, while performing the duties of sheriff and commissioners, were aware that the Oklahoma County Detention Center was acting under a Memorandum of Agreement between the U.S. Department of Justice that became effective in 2008.

48.   The U.S. Department of Justice determined that if the deficiencies continued to occur, that the County would be considered to be engaged in a pattern that violated the U.S. Constitution.

49. Defendant P. D. Taylor was, at all times relevant to this action, responsible for complying with the U.S. Department of Justice Memorandum of Agreement that was originally agreed to in 2008.

50. Defendant Taylor knowingly failed to take corrective action and acted with deliberate indifference in failing to provide Gonzalez with adequate mental health care, timely physician care, sufficient staff to supervise and protect prisoners from significant harm and the risk of harm.

51. Defendant Taylor and the Board of Commissioners of Oklahoma County continue to be in non-compliance with the Memorandum of Agreement, which shows a unconscionable pattern or practice of conduct that violates the Eighth and Fourteenth Amendments of the United States Constitution. This non-compliance went so far as actively denying the U.S. Department of Justice entry to perform a review of the facility in 2017 due to presumed fear of what the Department of Justice would find during that review.

52. That Turn Key Health Clinics, LLC failed to provide proper medical and psychological care and treatment for Krysten Gonzalez by not following the procedures, regulations and protocol to determine whether Ms. Gonzalez needed to be in a mental health care ward versus the general population. This policy and procedure included acquiescing to the request by the Board of Commissioners of Oklahoma County and P. D. Taylor that the Turn Key Health Clinics, LLC's employees only identify a small number of inmates that would be eligible to be placed in the mental health ward.

53. That Turn Key Health Clinics, LLC, as a correctional health care company, would know of the need for additional mental health care facilities at the Oklahoma County Detention Center, and their knowledge of these deficiencies was a deliberate indifference that violated Gonzalez's Eighth and/or Fourteenth Amendment rights. These violations were the proximate cause of Krysten Gonzalez's death by suicide.

54. As a result of the Defendants' actions, damages in excess of Seventy-five Thousand Dollars are sought for the Estate of Krysten Mischelle Gonzalez for her pain and suffering, funeral bills incurred, loss of life and enjoyment, violation of Constitutional rights, loss of future earnings and any other loss and/or damage permitted under § 1983, Oklahoma and/or federal common law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kelly Kirkendall-Heller, individually and as Special Administrator for the Estate of Krysten Mischelle Gonzalez, deceased, prays that this Court enter judgment granting the following relief against the Defendants:

A. Damages in excess of Seventy-five Thousand Dollars;

B. Punitive damages as determined by a jury;

C. Reasonable attorney fees, expert fees and costs allowable under 42 U.S.C. § 1988;

D. Any other relief this Court deems just and proper.

E. Plaintiff requests a jury trial.

        Respectfully submitted,

        <u>s/ Derek S. Franseen</u>
        Micky Walsh, OBA No. 9327
        Derek S. Franseen, OBA No. 30557
        Walsh & Franseen
        200 E. 10th Street Plaza
        Edmond, OK 73034
        (405) 843-7600 - Telephone
        (405) 606-7050 – Facsimile
        Attorneys for Plaintiffs