**Kathryn J. Wild, RN, MPA, CCHP-RN**
**1148 Dreamcatcher Bluff, Mesquite, NV 89034**
**Phone: 909-720-0961**

---

# Expert Report

## I.    INTRODUCTION

My name is Kathryn J. Wild.  My business address is 1148 Dreamcatcher Bluff, Mesquite, NV 89034.  I was retained on Behalf of Turn Key Health Clinics LLC to consult in the case of *Gabrielle K. Pasqualetti,as Special Administrator for the Estate of Krysten Mischelle Gonzalez, deceased v Sheriff Tommie Johnson, III, in his official capacity; P.D. Taylor, individually, and Turnkey Health Clinics, LLC.*


I have been asked to review the care and treatment provided to Ms. Krysten Mischelle Gonzalez by Turnkey Health Clinics, LLC nursing personnel while incarcerated at the Oklahoma County Detention Center**.** Specifically, I have been asked to opine on the reasonableness of the care provided throughout her stay, Turn Key personnel's adherence to the standard of care in the correctional health setting, and whether Turn Key personnel disregarded Ms. Gonzalez' healthcare needs.


I am a licensed Registered Nurse with a master's degree in public administration and certified as a Corrections Healthcare Professional - RN by the National Commission on Correctional Healthcare (NCCHC) concerning the delivery of specialized nursing care in correctional facilities. I have worked in the field of Corrections Healthcare for over 35 years as a Registered Nurse, and Health Services Administrator responsible for the administration of healthcare, training, and supervision of healthcare employees, as well as the formation and implementation of policy applicable to staff who provide healthcare to persons housed in corrections facilities.  My Curriculum Vitae and fee schedule are attached.


I am retained as an expert witness who is knowledgeable and experienced in the training, supervision and monitoring of healthcare administered to prisoners housed in the setting of a correctional facility, including but not limited to the areas of corrections nursing care, corrections healthcare, corrections healthcare administration, corrections healthcare policy formation and implementation, and the implementation and maintenance of policies and procedures that comply with national corrections standards, including but not limited to those by the NCCHC, the American Correctional Association (ACA), and the Prison Rape Elimination Act (PREA).  I have served as an accreditation surveyor for the Institute for Medical Quality (IMQ) providing accreditation surveys in Local Detention Facilities and Juvenile Halls.  In addition, I have provided many Local Detention Facilities with on-site preparation for NCCHC and ACA accreditation surveys and am very familiar with the standards for the delivery of healthcare in correctional settings.

EXHIBIT 10

*Pasqualetti (Gonzalez) v Turnkey*

## II.    MATERIALS REVIEWED

In preparation for forming the opinions expressed below, in addition to my experience in the correctional healthcare field, I have reviewed the following materials:

1.  Complaint dated 01/07/2021,
2.  Amended Scheduling Order dated 12/09/2021,
3.  Second Amended Scheduling Order dated 06/03/2022,
4.  Scheduling Order dated 10/19/22,
5.  Sixth Amended Scheduling Order dated 12/22/23,
6.  Turn Key Rule 26 Initial Disclosures,
7.  Turn Key Supplemental Initial Disclosures,
8.  Defendant Turn Key Responses to Plaintiff's First Set of Interrogatories and Requests for Production to Turn Key,
9.  Turn Key Contract with Oklahoma County,
10. Documents Produced Pursuant to Protective Order,
11. Oklahoma County Medical Records TK001-116,
12. CorEMR records for Krysten Gonzalez,
13. CorEMR MARs,
14. CorEMR Flowsheets,
15. Prior Booking and Arrest Records,
16. Gonzalez Activity Log,
17. Gonzalez Misconduct and Disciplinary Report 1/8/19,
18. OU Medical Records,
19. Crime Scene Log,
20. Medical Examiner's Report and Photos,
21. OCSO – SIU Report – Krysten Gonzalez,
22. OCPD Arrest Report,
23. Oklahoma State Department of Health Jail Incident Report,
24. Inmate Interview Document,
25. Jail Staff Reports,
26. Gonzalez Personal Letters,
27. Gonzalez Request of Staff and Grievances,
28. Depositions,
    a.  Mark Opgrande, Communications Director,
    b.  Curtis Whittington, Criminal Investigator,
    c.  Jacob Strohl, Psychiatrist,
    d.  Paul Taylor, Sheriff,
    e.  Sandra Zoski, LPN,
    f.  Michael Lyon, Investigator,
    g.  Alicia Irvin, PhD, 30(B)(6) Witness,
29. Tim Gravette, Plaintiff Expert Report,
30. Oklahoma Nursing Practice Act,
31. The Oklahoma State Department of Health, Title 310, Chapter 670, City and County Detention Facility Standards,
32. National Commission on Correctional Health Care (NCCHC) – Standards for Health Services in Prisons (2018 Edition)

EXHIBIT 10

*Pasqualetti (Gonzalez) v Turnkey*

### III. SUMMARY OF DOCUMENT REVIEW

| Time | Provider/Service | Comments |
|------|------------------|----------|
| **Thursday, October 11, 2018** | | |
| @ 0140 | OCSD Arrest Report **OCSO-00026-39** | Ms. Krysten Mischelle Gonzalez (aka Krysten Michelle Pasqualetti) was arrested while sitting outside of a CVS for outstanding warrants for Possession of CDS (Controlled Dangerous Substance) with Intent to Distribute.  She was noted to be uncooperative and combative. |
| @ 0302 | Pre-Booking Screen **TK107** | BP 104/91, P 120, R 18, T 97.4, SPO2 98%, weight 123 pounds.  When asked if she had any immediate health needs, Ms. Gonzalez reported "Hypogly" and seizures.  She denied being involved or injured in an accident within the past 24 hours. |
| @ 0641 | Intake Screening Mental Health Rebecca Cargill, LPN **TK002-003** | Ms. Gonzalez was noted to be able to answer questions coherently, and denied any current medications for depression, psychosis, or for other mental health conditions.  She denied current suicidal ideation or attempting self-harm in the past year.  She had no signs or conditions of recent suicide attempts or self-harm.  She denied hearing voices or noises that others can't hear or being extremely depressed.  She reported being seen by a mental health professional from the Crisis Center, Red Rock but not in the past 7 years.  She reported being hospitalized for a traumatic brain injury (TBI) in 2017.  There were no current mental health symptoms noted and she was cleared for general population.  She was referred to MH. |
| @ 0641 | Chart Note R. Cargill, LPN **TK083** | Red Rock Crisis Center called, and stated Ms. Gonzalez was never started any MH meds. |
| @ 0646 | Intake Screening Medical R. Cargill, LPN **TK003-005** | Ms. Gonzalez was medically screened by the nurse.  She reported an allergy to penicillin, no injuries due to her arrest or booking, or any signs or complaints of significant injury, excessive bleeding, altered consciousness, respiratory distress, chest pains, or psychosis, or other emergent condition requiring immediate medical treatment. Ms. Gonzalez denied taking any current medications or having any chronic medical conditions.  Her appearance was unremarkable with appropriate behavior.  Ms. Gonzalez reported IV heroin and meth use with current withdrawal symptoms. BP 104/88, P 102, R 18, T 97.4, weight 123 pounds, SPO2 99%.   She was noted to be alert and oriented. She was cleared for general population in a lower level/lower bunk.  She was provided with information on the facility's sick call process. |
| **Saturday, October 13, 2018** | | |
| @ 1017 | Drug & Alcohol Assessment **TK0014-15** | Ms. Gonzalez denied signs or symptoms of detox and refused vital sign check.  Alert and oriented x 4.  CIWA Score = 0. |

*Pasqualetti (Gonzalez) v Turnkey*

| @ 2134 | Drug & Alcohol Assessment Jessica Julian **TK0015-16** | Ms. Gonzalez denied signs or symptoms of detox and refused vital sign check.  Alert and oriented x 4.  CIWA Score = 0. |
|---|---|---|
| **Sunday, October 14, 2018** | | |
| @ 1945 | Drug & Alcohol Assessment Jessica Julian **TK0016-17** | Ms. Gonzalez denied signs or symptoms of detox and refused vital sign check.  Alert and oriented x 4.  CIWA Score = 0. |
| **Monday, October 15, 2018** | | |
| @ 0028 | Drug & Alcohol Assessment Linda House, LPN **TK0017-18** | Ms. Gonzalez denied signs or symptoms of detox.  BP 110/85, P 100, R 17, T 98.9, SPO2 99%.  CIWA Score = 0. |
| **Tuesday, October 16, 2018** | | |
| @ 1147 | Mental Health Rounds Jeanette Loudermilk **TK0018** | Ms. Gonzalez was seen for a routine MH referral.  She self-reported anxiety, depression, and PTSD, and taking Prozac 100 mg, Buspar unknown strength, Trazodone 150 mg, and Neurontin 400 mg TID.  These medications were unconfirmed.  The patient stated she had seizures and is not sleeping well and having some difficulty remembering things.  She further stated she needs her medications restarted and reported that she was taking them as recently as 1 week ago, prior to arrest.  She was alert and in no distress, and cooperative.   She was referred to psychiatry. |
| **Wednesday, October 17, 2018** | | |
| @ 1110 | Psychiatry Note Dr. Jacob Strohl **TK0018-20** | Patient seen and reported hypervigilance, nightmares, startle response, dissociation related to rape at 17 years old.  Record review shows prior scripts of buspirone and fluoxetine.  She described poor sleep secondary to nightmares. The patient reported increased depression and anxiety.  She reported a history of seizure disorder treated with Gabapentin 400 mg TID but does not know whether she has had an EEG.  Denied SI/HI/AVH.<br><br>She was noted to be appropriately groomed and attired and was calm and cooperative.  A&Ox4, constricted affect and anxious mood.  She denied hallucinations within the past 90 days.  <u>Her current symptom severity was mild with no significant impact on inmate's ability to function satisfactorily in the current setting</u>.  The following medications were ordered:<br>• Fluoxetine (Prozac) 20 mg QAM<br>• Buspirone (Buspar) 15 mg BID<br>• Terazosin 1 mg QHS (for nightmares)<br>The patient was educated about the treatment plan and consented to the medication regimen. |

*Pasqualetti (Gonzalez) v Turnkey*

| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg |
|---|---|---|
| **Thursday, October 18, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg |
| | Sick Call Request<br>**TK102** | Ms. Gonzalez submitted a request stating, "I hit my head 2 days ago and have had a headache that won't go away and makes me dizzy". |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg |
| @ 1908 | Nurse Protocol<br>Headache<br>Carri Matthies, RN<br>**TK020-21** | Ms. Gonzalez reported that she hit her head two to three days ago and had been hurting since.  She reported a history of seizures and used to have migraines all the time but hasn't had any recently.  She was A&Ox3 and reported she had been off her Amitriptyline for seizures since being in the facility.  BP 100/80, P 92, R 16, T 96.5, SPO2 98%.  She requested to see the doctor and was put on the schedule for chronic care clinic.  Acetaminophen 500 mg x 2 BID ordered for headache. |
| **Friday, October 19, 2018** | | |
| @ 0726 | Medication Order<br>Holly Martin, APRN<br>**TK040** | Oxcarbazepine (Trileptal) 300 mg BID for seizure control. |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Acetaminophen 1000 mg |
| @ 1001 | Chronic Care Clinic<br>J. Constanzer, APRN<br>**TK034-37** | Ms. Gonzalez was seen by the nurse practitioner for a reported history of seizures.  She reported having seizures x 2 years due to a head injury.  She reported her last seizure was 3 weeks ago.  She reported taking amitriptyline for this.  Patient was advised that this medication would not be started for seizures in this setting however she had been started on Trileptal for management/prevention of seizures.  Patient also reported IV meth and heroin use.<br>She reported she had been using for the last 10 years and denied ever being diagnosed with hepatitis or HIV.  She reported having increased flatulence while in jail.  Patient advised to increase fluid intake to prevent dehydration.  On exam she appeared in NAD, was alert and oriented, PERRLA, cardiac and respiratory assessment WNL.  Abdomen with normal bowel sounds x 4.  BP 97/79, P 103, R 16, T 98.3, weight 135 pounds, SPO2 98%.  They discussed medications, treatment plan, and scheduled follow up. |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Acetaminophen 1000 mg<br>Oxcarbazepine 300 mg |

*Pasqualetti (Gonzalez) v Turnkey*

|  | | |
|---|---|---|
| **Saturday, October 20, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Acetaminophen 1000 mg |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Acetaminophen 1000 mg<br>Oxcarbazepine 300 mg |
| **Sunday, October 21, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Acetaminophen 1000 mg |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Acetaminophen 1000 mg<br>Oxcarbazepine 300 mg |
| **Monday, October 22, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Acetaminophen 1000 mg |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Acetaminophen 1000 mg<br>Oxcarbazepine 300 mg |
| **Tuesday, October 23, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Acetaminophen 1000 mg |
| | Sick Call Request<br>**TK100** | Ms. Gonzalez submitted a request stating, "have severe pain radiating thru the left side of my body and doesn't go away and is very painful". |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Acetaminophen 1000 mg<br>Oxcarbazepine 300 mg |
| **Wednesday, October 24, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Acetaminophen 1000 mg |
| @ 0800 | Jail Facility Report<br>Sgt. Thomas Earsom | Red Rock Behavioral Health Services (the court appointed treatment provider assigned to Ms. Gonzalez' treatment) |

*Pasqualetti (Gonzalez) v Turnkey*

| | | |
|---|---|---|
| OCSO-00060-61 | | arranged through Sergeant Thomas Earsom to visit Ms. Gonzalez at the jail.  Ms. Gonzalez was seen by Jessica McCrary (case manager) who was employed by Red Rock Behavioral Health Services to perform an O.D.A.S.L. (Oklahoma Determination of ASAM Service Level) evaluation.  This evaluation is utilized to assess an individual's criteria for inpatient services, and to effectively place his/her name on a waiting list until a state treatment bed becomes available for services. |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Acetaminophen 1000 mg<br>Oxcarbazepine 300 mg |
| **Thursday, October 25, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Acetaminophen 1000 mg<br>Ibuprofen 400 mg |
| @ 0857 | Nurse Protocol Musculosketal/Sprain Tadasha Morris, LPN **TK020-21** | Ms. Gonzalez complained of left shoulder pain x 1 week.  She reported it as sharp pressure and throbbing.  Pain level 7/10.  Full range of motion and pulses present.  The patient stated that she has seizures and thinks pain is related to that.  Ibuprofen 400 mg BID ordered for pain. |
| @ 1122 | Pregnancy Test **TK005** | Negative |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Acetaminophen 1000 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| **Friday, October 26, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| | Sick Call Request **TK114** | Ms. Gonzalez submitted a request stating, "My tooth is causing me to have issues eating, drinking, and sleeping.  Please help, this is awful". |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| **Saturday, October 27, 2018** | | |
| @ 0415 | Nurse Protocol Back Pain | Ms. Gonzalez complained of neck and left back and left arm pain.  She was resting on her back when it started.  She reported |

*Pasqualetti (Gonzalez) v Turnkey*

| | Carri Matthies, RN **TK021-22** | a pain level of 10/10 with numbness and tingling. BP 125/84, P 89, R 16, T 97.1, SPO2 97%. Her exam was within normal limits. The patient was advised to take Acetaminophen as prescribed. |
|---|---|---|
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
|  | **Sunday, October 28, 2018** | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| | Sick Call Request **TK109** | Ms. Gonzalez submitted a request stating, "Can I please have chronic care see me so I can change my seizure meds and get on meds for my neuropathy". |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
|  | **Monday, October 29, 2018** | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| @ 1042 | History and Physical Toni Woods, RN **TK005-008** | Ms. Gonzalez was seen for her History & Physical. It was noted her current medications were:<br>• Ibuprofen 400 mg BID<br>• Oxcarbazepine (Trileptal/anticonvulsant) 300 mg BID<br>• Acetaminophen 500 mg BID<br>• Fluoxetine (Prozac/antidepressant) 20 mg QAM<br>• Buspirone (anxiety) 15 mg BID<br>• Terazosin (for nightmares) 1 mg QPM<br><br>The patient reported a history of seizures from TBI when she was hit in the head with a pistol 1 year ago and a car accident 2 years ago. She reported tobacco use, and IV meth daily. She reported being hospitalized for PTSD in **June 2018** and a suicide attempt by heroin. She denied current suicidal ideation. Her general condition was unremarkable, except for tattoos and missing teeth. BP 125/84, P 89, R 18, T98.1, weight 133 pounds, SPO2 99%. A PPD was placed in the LFA. |

*Pasqualetti (Gonzalez) v Turnkey*

| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
|---|---|---|
| **Tuesday, October 30, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| @ 1151 | Nurse Protocol Dental Tadasha Morris, LPN **TK025** | The patient was seen for multiple decaying teeth causing pain to the upper left side.  Pain level 7/10.  BP 108/76, P 80, R 20, T 98.6, weight 139, SPO2 99%.  Contributing factors are drinking hot or cold.<br><br>It was noted that she was currently on Ibuprofen for pain. |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Oxcarbazepine 300 mg |
| **Wednesday, October 31, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| @ 0900 | PPD Read **TK008** | Negative |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Oxcarbazepine 300 mg |
| **Thursday, November 1, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg |
| | Sick Call Request **TK115** | Ms. Gonzalez submitted a request stating, "I need to see mental health about my medicine please". |
| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| **Friday, November 2, 2018** | | |
| @ 0800 | MAR | Buspirone 15 mg<br>Fluoxetine 20 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
| | Sick Call Request **TK110** | Ms. Gonzalez submitted a request stating, "I've been having horrible migraines and also swelling and soreness in my throat". |

*Pasqualetti (Gonzalez) v Turnkey*

| @ 1700 | MAR | Buspirone 15 mg<br>Terazosin 1 mg<br>Oxcarbazepine 300 mg<br>Ibuprofen 400 mg |
|---|---|---|
| **November 3, 2018 – January 8, 2019** | | |
| Ms. Gonzalez continued to receive her medications as ordered throughout the remainder of her incarceration and medications were adjusted as needed by medical, dental, and mental health providers. | | |
| **Monday, November 5, 2018** | | |
| @ 1036 | Dental Sick Call<br>Tanner Hays, DDS<br>**TK090** | S: Patient was seen for report of multiple decaying teeth causing pain to upper left side.<br>O: patient has multiple teeth with caries upper left symptomatic at this time<br>A: #13, 14, 15 pulpal necrosis, apical abscess<br>P: Patient would like to save her remaining teeth, if possible, hopefully getting out soon.  Will order meds to treat symptoms of infection.  Advised patient to let us know if she needs anything further. |
| @ 1422 | Mental Health<br>Rounds – Follow up<br>S. Valencia<br>**TK025-26** | S: The patient was seen for follow up and stated, "no, not right now" when asked about current mental health needs.<br>O: Observed in cell at door calm and cooperative.  <u>Patient denied she had any mental health needs at this time</u>.<br>A: appears alert and oriented<br>P: Patient will remain on current status<br>E: Patient was educated on how to request mental health if the need arises. |
| @ 1443 | Medication Order<br>Tanner Hays, DDS<br>**TK041-42** | Clindamycin 2 Caps BID<br>Ibuprofen 800 mg BID |
| @ 1500 | Nurse Protocol<br>Abdominal<br>Tadasha Morris, LPN<br>**TK026** | Ms. Gonzalez complained of an upset stomach.  Her last BM was 3 days prior.  Pain level 6/10.  P 60, R 18, T 99.3, Weight 139 pounds, SPO2 100%.  She reported cramping and flatulence.<br><br>Abdomen was soft with normal bowel sounds.  She was instructed to increase water intake and fibrous foods, avoid straining when passing stool.<br><br>P: Pepto Bismol BID per protocol |
| @ 1501 | Medication Order<br>Tadasha Morris, LPN<br>**TK043-43** | Pepto Bismol BID |
| **Monday, November 12, 2018** | | |
| | Sick Call Request<br>**TK111** | Ms. Gonzalez submitted a request stating, "Please can you put me on Trazadone HS for sleeping and without it I'm only sleeping like 3 hours.  I was taking it every night before I got arrested". |

*Pasqualetti (Gonzalez) v Turnkey*

| | | Friday, November 16, 2018 |
|---|---|---|
| | Sick Call Request **TK103** | Ms. Gonzalez submitted a request stating, "toothache". |
| | | **Saturday, November 17, 2018** |
| @ 0942 | Mental Health Rounds – Follow up M. Hanes, MAT, LPC **TK026-27** | The client was seen for routine mental health referral. She was seen face to face and was dressed in shirt and pants. She appeared healthy overall. She was a 29-year-old white female that appeared her stated age. She presented as a reliable historian and informant. Stated her charge was CDS with intent. <u>No presenting mental health symptoms at time of interview.</u> She stated her primary mental health complaint as "I'm not sleeping very well…they do not have me on my trazadone...could they up my busbar. It is not working very well…I have been taking it for 2 years." Currently the client was taking Busbar and Prozac. The MAR indicted she is medication compliant. She denied any side effects from her medications. She was cooperative with interview, awake and alert, kinetics normal. Line of reasoning was logical. Oriented to person, place, time, and situation. No overt signs of psychosis. No perceptual disturbances. Memory was not formally evaluated. Expressive and receptive language normal. Eye contact good. <u>Client presented as low risk for self-harm at time of interview.</u> Referral to psychiatrist and follow up as needed. |
| @ 1052 | Nurse Protocol Dental Tadasha Morris, LPN **TK027-28** | The patient was seen for complaint of bottom teeth causing pain. She had multiple decaying teeth. BP 133/77, P 85, R 20, T 98.0, SPO2 99% Ibuprofen 400 mg BID |
| | | **Monday, November 19, 2018** |
| @ 1031 | Dental Visit Tanner Hays, DDS **TK091** | S: patient complained of bottom teeth causing pain. Patient has multiple decaying teeth. O: Clinical exam shows #4 has gross decay A: #4 pupal necrosis, apical abscess P: recommended extraction, but patient unwilling to extract these teeth, very nervous. Will treat with antibiotics to treat infection. |
| @ 1425 | Medication Order Tanner Hays, DDS **TK043-44** | Clindamycin 150 mg 2 Caps BID Ibuprofen 800 mg BID |
| | | **Tuesday, November 20, 2018** |
| @ 1343 | Psychiatry Visit Dr. Gabriel Cuka **TK028-29** | The patient was seen by the physician, and they agreed to medication changes. She reported that "Prozac makes me suicidal, and I had all my suicide attempts while taking Prozac." She reported Terazosin is OK, Buspar was increased to 30 mg BID, Prozac was discontinued, and Lexapro (antidepressant) added. <u>She denied suicidal/homicidal ideation or reported thoughts/plans of self-injury.</u> |

EXHIBIT 10

*Pasqualetti (Gonzalez) v Turnkey*

| | | |
|---|---|---|
| **Wednesday, November 28, 2018** | | |
| | Sick Call Request **TK104** | Ms. Gonzalez submitted a request stating, "dentist tooth". |
| **Thursday, November 29, 2018** | | |
| @ 1111 | Nurse Protocol Dental Tadasha Morris, LPN **TK028-30** | The patient was seen for complaint of broken right upper molar for one week. Pain level 9/10. BP 110/72, P 70, R 20, T 98.2, weight 144 pounds, SPO2 99%. Ibuprofen 400 mg BID x 7 days |
| **Friday, November 30, 2018** | | |
| @ 0725 | Chart Note TK074 | Patient requesting seizure meds to be changed. |
| | Medication Order J. Constanzer, APRN **TK046** | Keppra 500 mg BID |
| **Sunday, December 2, 2018** | | |
| | Sick Call Request **TK112** | Ms. Gonzalez submitted a request stating, "Face swollen very bad left side". |
| @ 1113 | TO Shirley Hadden Kent King, MD **TK030** | Phone order received for Zyrtec 10 mg QD x 3 days and Benadryl 25 mg x 1 now. |
| @ 1114 | Chart Note Shirley Hadden **TK083** | Ms. Gonzalez reported swelling under left eye. Small amount of irritation. Able to completely open left eye. No fever or sweats. No distress noted. Dr. King notified. Most likely allergic reaction. Medications prescribed. Educated patient to report signs and symptoms of fever, chills, or worsening of edema. |
| **Tuesday, December 4, 2018** | | |
| @ 1049 | Chart Note Tadasha Morris, LPN **TK083 & TK098** | Patient refused sick call visit |
| **Thursday, December 6, 2018** | | |
| | Sick Call Request **TK092** | Ms. Gonzalez submitted a request stating, "Dentist, Swollen face/swollen gums/tooth abscess. |
| **Friday, December 7, 2018** | | |
| | Sick Call Request **TK116** | Ms. Gonzalez submitted a request stating, "Can I please change my anxiety med to Zyprexa. The Buspar isn't working anymore." |
| @ 1418 | Vital Signs | BP 115/78, P 100, R 20, T 99.0, weight 143 pounds, SPO2 99% |
| @ 1418 | Nurse Protocol Dental Tadasha Morris, LPN **TK030-31** | The patient was seen for complaint of left side dental pain and swelling. Pain level 8/10. Patient is currently on list to see the dentist. Ibuprofen 400 mg BID x 7 days. |
| **Monday, December 10, 2018** | | |
| @ 0926 | Dental Sick Call Tanner Hays, DDS **TK091** | S: patient complained of broken right upper molar O: clinical exam shows #12 has gross decay, buccal fistula present |

*Pasqualetti (Gonzalez) v Turnkey*

| | | |
|---|---|---|
| | | A: #12 pulpal necrosis, apical abscess.<br>P: recommended extraction #12. Patient very apprehensive about dental work. Would like meds to treat this for now. |
| @ 1418 | Medication Order<br>Tanner Hays, DDS<br>**TK048-49** | Amoxicillin 500 mg BID<br>Ibuprofen 800 mg BID |
| **Tuesday, December 11, 2018** | | |
| @ 1409 | Mental Health<br>Rounds – Follow up<br>S. Valencia<br>**TK031-32** | S: The patient was seen for follow up. Patient stated, "I need my meds adjusted."<br>O: observed in calm and cooperative and reports that she feels like she needs a stronger dose of the Lexapro and requests an increase. She also reported she is currently on Buspar BID here and that she would like to have this discontinued and have Zyprexa added in lieu of the Buspar. Patient reported that Zyprexa is what she takes on the outside and reports her provider as Red Rock.<br>A: appears alert and oriented. <u>Does not appear to show any signs of mental health concerns at this time</u>.<br>P: patient will remain on current status.<br>E: educated on how to request mental health if the need arises. |
| **Monday, December 17, 2018** | | |
| | Sick Call Request<br>**TK099** | Ms. Gonzalez submitted a request stating, "Can I see Chronic Care for my back pain. I need Naprosyn". |
| **Tuesday, December 18, 2018** | | |
| @ 0916 | Vital Signs<br>**TK087** | BP 134/73, P 76, R 18, T 98.0, Weight 148 pounds, SPO2 98% |
| @ 1517 | Nurse Protocol<br>Dental<br>Tadasha Morris, LPN<br>**TK031-32** | The patient was seen for complaint of low back pain. Pain level 7/10. She was requesting Naproxen. Dr. Kent King was called, and he ordered Naproxen 500 mg BID x 7 days. |
| **Saturday, December 29, 2018** | | |
| | Sick Call Request<br>**TK105** | Ms. Gonzalez submitted a request stating, "can I change my anxiety meds please". |
| **Monday, December 31, 2018** | | |
| | Sick Call Request<br>**TK106** | Ms. Gonzalez submitted a request stating, "Can we please restart my Naprosyn for my back". |
| **Wednesday, January 2, 2019** | | |
| @ 0800 | MAR | Buspirone 30 mg<br>Escitalopram 10 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg |
| @ 1055 | Medication Order<br>Holly Martin, APRN<br>**TK050** | Patient requesting refill of Naproxen as it was given two weeks ago. Naproxen 500 mg BID ordered |
| @ 1649 | Mental Health<br>Rounds – Follow up | The patient was seen for follow up and stated that she thinks the Lexapro is making her stomach hurt and wants to change to |

*Pasqualetti (Gonzalez) v Turnkey*

| | Deboarh Chesser **TK032** | something else.   Patient was observed in cell, alert and cooperative.  She appeared to currently be stable with no overt signs of mental health concern.  Patient will remain on current status and follow up as needed.  Patient educated on referral process. |
|---|---|---|
| @ 1700 | MAR | Buspirone 30 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg<br>Terazosin 1 mg |
| | **Thursday, January 3, 2019** | |
| @ 0800 | MAR | Buspirone 30 mg<br>Escitalopram 10 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg |
| @ 1700 | MAR | Buspirone 30 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg<br>Terazosin 1 mg |
| | **Friday, January 4, 2019** | |
| @ 0800 | MAR | Buspirone 30 mg<br>Escitalopram 10 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg |
| @ 1700 | MAR | Buspirone 30 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg<br>Terazosin 1 mg |
| | **Saturday, January 5, 2019** | |
| @ 0800 | MAR | Buspirone 30 mg<br>Escitalopram 10 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg |
| @ 1700 | MAR | Buspirone 30 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg<br>Terazosin 1 mg |
| | **Sunday, January 6, 2019** | |
| @ 0800 | MAR | Buspirone 30 mg<br>Escitalopram 10 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg |
| @ 1700 | MAR | Buspirone 30 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg<br>Terazosin 1 mg |

EXHIBIT 10

*Pasqualetti (Gonzalez) v Turnkey*

| Monday, January 7, 2019 | | |
|---|---|---|
| @ 0800 | MAR | Buspirone 30 mg<br>Escitalopram 10 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg |
| @ 1700 | MAR | Buspirone 30 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg<br>Terazosin 1 mg |
| Tuesday, January 8, 2019 | | |
| @ 0800 | MAR | Buspirone 30 mg<br>Escitalopram 10 mg<br>Levetiracetam 500 mg<br>Naproxen 500 mg |
| @ 1310 | Post Use of Force Assessment<br>Sandi Zoski, LPN<br>**TK032-33** | S: "I got into a fight with my cellie."<br>O: Patient was ambulatory, alert, and oriented, and cooperative. BP 124/76, P 119, R 18, T 98.2, SPO2 98%. Right knuckles scratched, and left side of neck.  Wound care provided with hydrogen peroxide and antibiotic ointment, and gauze.  She was advised to let medical know if she had any problems. |
| | Sandi Zoski, LPN<br>Deposition | LPN Zoski testified (**page 17**) that Ms. Gonzalez was brought to the clinic after a "inmate-on-inmate."  She was laughing and carrying on.  LPN Zoski asked her if she was injured and she said, "No".  She had some scratches on her neck and on her arm and there was no blood.  She cleaned her up and asked again if she was injured.  She said, "No, she didn't need any medical services, that she was okay, and she was fine, but you ought to see the girl I fought.  I whipped her ass really well." LPN Zoski testified (**page 27**) that if somebody is upset, crying, showing signs of mental health, she immediately gets them urgent mental health care.  She said that Ms. Gonzalez showed no signs of mental health whatsoever. |
| | Jail Incident Report<br>SDO Adams<br>**OCSO-00055** | After Ms. Gonzalez was checked out by medical and did not complain of any serious injuries, she was moved to 6D17 to prevent any further altercation. |
| @ 1440 | Jail Incident Report<br>Phillips Hall<br>**OCSO-00048** | Upon review of video surveillance of 6D Cell 17 a blanket can be seen placed on the top bunk that was referenced having been observed by responding personnel obscuring the body of Gonzalez in the corner. |
| @ 1518 | | A sight check was seen having been performed on Cell 17 however the blanket was still hanging from the top bunk, so it is unknown if the Officer observed Gonzalez anywhere in the cell. |
| @ 1530 | Jail Staff Report<br>Officer Bell<br>**OCSO-00045** | Officer Bell performed a sight check and peered through the door to see inmate Gonzalez sitting on the bottom bunk slouched over leaning up to look at her. |

*Pasqualetti (Gonzalez) v Turnkey*

| | | |
|---|---|---|
| @ 1607 | Jail Incident Report SDO Adams **OCSO-00056-57** | SDO Adams entered the 6th floor to start med pass. She started med pass on the bottom tier and was conducting a sight check at the same time. She informed the med passer (Corpus) that inmate Gonzalez had been moved down to 6D17. The reason Gonzalez had been moved from 6D49 was she and her cell mate were in a physical fight. SDO Adams approached 6D17 and looked in the window. She noticed a blanket hanging over the front of the top bunk. The blanket blocked her view of Gonzalez. She could only see her feet protruding from the far end of the bunk, which appeared to be face down on the floor. She opened the cell and asked Gonzalez if she wanted her meds. She did not respond and upon walking to the back of the cell, found Gonzalez upper body suspended by a sheet with one end wrapped around her neck and the other end tied to a metal object attached to the bunk. Her arms were hanging down and she was motionless and unresponsive.

The officer immediately called for nurse and gurney and advised that an inmate was hanging. She quickly retrieved the cut down tool from the Pod office and cut the sheet and freed Gonzalez who fell to the floor in the corner of the cell between the bunk and the wall. She attempted to pick her up and move her out of the corner to start CPR, but she was too heavy. A few moments later, a male and female nurse arrived and pulled Ms. Gonzalez out of the corner and started CPR. |
| @ 1620 | Jail Incident Report **OCSO-00021-22** | SDO Adams was completing sight checks on 6D when she arrived at 6D-17. SDO Adams noticed the window of the cell covered and upon entering the cell door, discovered Ms. Gonzalez with a sheet tied around her neck from the top bunk and appeared to be unresponsive. SDO Adams immediately called for Medical and the Shift Commander which began CPR and life saving measures. EMSA and Fire were notified and arrived to take over life saving measures. EMSA took Ms. Gonzalez to OU medical center at **1657 hours**. Dr. Celii with OU Medical pronounced her death at **1705 hours**. Detention Investigations were notified and are completing the overall investigation of the incident. |
| @ 1714 | Chart Note Kent King, MD **TK083** | The doctor charted that he was just informed that they found an inmate hanging with a sheet by an officer. EMS was called. Inmate was unresponsive and pulseless. CPR was done for about 10 minutes waiting for EMS to arrive. She was intubated and several ACLS meds were given. She was transferred to the ER. She was seen earlier today for an inmate-on-inmate altercation. VS were normal and no significant injuries were found. |
| @ 1720 | Urgent Care Report Shirley Hadden | The nurse charted that the patient was found by officer who was conducting med pass. She had a sheet hanging around her |

*Pasqualetti (Gonzalez) v Turnkey*

| | | |
|---|---|---|
| | **TK033-34** | neck.  When medical arrive on scene, patient was unconscious, unresponsive, with no pulse or respirations.  CPR was started by RN Wood and LPN Zoski.  RN Reisch arrived with AMBU bag for rescue breathing.  The AED was applied, and no shock advised.  EMS had already been called.  CPR continued until EMSA arrived.   They assumed care of the patient.   Ms. Gonzalez was transported to the hospital. |
| | Jail Incident Report Phillips Hall **OCSO-00048** | After Ms. Gonzalez had been transported to the hospital the officer interviewed **Inmate Nicholson** who had been in an altercation with Ms. Gonzalez earlier that day.   Inmate Nicholson stated that earlier that morning, her and Gonzalez woke up and were both having a bad day when they got into an argument which led to a short altercation with one another. Nicholson stated they had been close friends up until that time for the last few months while housed together.   After the altercation, both were taken to the clinic and separated into different cells.  Neither received any severe injuries from the altercation.  Nicholson stated that Gonzalez had recently been upset and had thought of hurting herself.  Nicholson stated she had not reported this information, but she observed Gonzalez fill out a sick call request form which indicated she was not feeling like herself.  <br><br>**Inmate Carolyn Morris** was interviewed and stated that Gonzalez had given her a note earlier in the day in which Gonzalez had apologized for saying the word "nigger" while she was upset earlier that morning.  In the note, Gonzalez stated that she had been upset all week and wanted to hurt herself because she wasn't getting out. |
| @ 1722 | OCSD Special Investigations Report **OCSO-00009** | After Ms. Gonzalez was transported to the hospital, the investigator found a sick call request form in Ms. Gonzalez' cell stating that she was requesting to be seen and labeled it "mental health urgent" and that she "feels like she was going to have a breakdown and that she was having thoughts I don't normally have." |
| **Monday, February 11, 2019** | | |
| | Jail Facility Report Sgt. Thomas Earsom **OCSO-00060-61** | After Ms. Gonzalez had passed away, sources at Red Rock explained to Sgt. Earsom that Ms. McCrary no longer is employed as a result of her giving misleading information to her supervisors, the Oklahoma County Courts and the Oklahoma County Mental Health Court Team pertaining to inmate Gonzalez completion of her ODASL (**October 24, 2018**).  It was explained that Ms. McCrary was not entitled or certified by the state to perform this type of evaluation and/or she physically did not follow through with entering her information properly into the state database.  This resulted in |

*Pasqualetti (Gonzalez) v Turnkey*

| | | inmate Gonzalez' name never being placed on the waiting list for treatment bed availability.<br><br>From the date of her perceived ODASL completion (**October 24, 2018**), to the date of inmate Gonzalez' passing, her status on the state waiting list was continuously discussed amongst the Mental Health Court Team, who were frequently informed by Jessica McCrary, that there was no change in her bed availability, and/or her status of when one would become available for in-patient treatment.  This information inability resulted in inmate Gonzalez remaining in-custody for an extensive amount of time. |
|---|---|---|

## V.    DISCUSSION AND OPINIONS

Based on my review of the documents provided to date, my education, training, 38 years of experience in correctional healthcare, and the facts cited above and below, it is my opinion that the care provided to Ms. Krysten M. Gonzalez by Turn Key Health Clinics, LLC. nursing personnel while incarcerated at the Oklahoma County Detention Center met reasonable and acceptable practices based on all the circumstances presenting to them at the time of the care provided, and they did not recklessly disregard any serious medical need.

### *Access to Care*

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-A-01** – **"Access to Care"** states that inmates have access to care to meet their serious medical, dental, and mental health needs.

**The Oklahoma State Department of Health, Title 310, Chapter 670, City and County Detention Facility Standards, 310:670-5-8 "Medical Care and Health Services"** states that adequate medical care shall be provided in a facility.  The administrator shall develop and implement written policies and procedures for complete emergency medical and health care services.

**Turn Key Health Policy & Procedure for the Oklahoma County Detention Center, # OCDC-A-01 "Access to Care"** states that access to care to meet serious medical, dental, and mental health needs is the principle upon which all health services and health care standards are based.

There were no barriers to accessing health care created by any Turn Key employee, policy, or practice.  Ms. Gonzalez was screened upon admission to the facility and provided with information on the facility's sick call process.  Ms. Gonzalez was also able to submit health care requests when needs arose and these were addressed in a timely manner. This standard was met.

*Pasqualetti (Gonzalez) v Turnkey*

### Receiving Screening

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-E-02 – "Receiving Screening"** states that receiving screening be performed on all inmates on arrival at the intake facility to ensure that emergent and urgent health needs are met.  This standard is intended to fulfill four purposes; 1) to identify and meet any urgent health needs of those admitted, 2) to identify and meet any known or easily identifiable health needs that require medical intervention before the health assessment, 3) to identify and isolate any inmates who appear potentially contagious, and (4) to appropriately obtain a medical clearance when necessary.

**The Oklahoma State Department of Health, Title 310, Chapter 670, City and County Detention Facility Standards, 310:670-5-8(B) "Medical Care and Health Services"** states that intake screening shall be performed on all inmates immediately upon admission to the facility and before being placed in the general population or housing area.  medical reception information shall be documented in a format approved by the designated medical authority which shall include inquiry into:

1. Current illnesses and health problems including medications taken and any special health requirements,
2. Behavioral observation, including state of consciousness and mental status,
3. Notation of body deformities, trauma markings, i.e., bruises, lesions, ease of movement, and jaundice,
4. Condition of skin and visible body orifices, including infestations, and
5. Disposition/referral of inmates to qualified medical personnel on an emergency basis.

**Turn Key Health Policy & Procedure for the Oklahoma County Detention Center, # OCDC-E-02 "Receiving Screening"** states that receiving screening is performed on all inmates on arrival at the facility to ensure that emergent and urgent health needs are met.

Ms. Gonzalez was pre-screened by the officer upon immediate entry to the facility and then fully screened by nursing personnel hours later.  She was noted with stable vital signs and was noted to be alert and oriented at the time of screening.  At the time of this screening, she denied any suicidal ideation or past suicide attempts.  She reported being seen by a mental health professional over 7 years prior and they were immediately contacted for more information.  Based on her stable presentation at the intake screening, which included a mental status exam, she was accepted for booking, housed in general population, and a referral was made for a mental health assessment.  Due to her report of recent opiate use, she was started on Drug and Alcohol Assessment monitoring to address any withdrawal symptoms that might arise.  This intake screening met the standard of care.

### Medically Supervised Withdrawal and Treatment

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-F-04 – "Medically Supervised Withdrawal and Treatment"** states that inmates who are intoxicated or undergoing withdrawal are appropriately managed and treated.

*Pasqualetti (Gonzalez) v Turnkey*

**Turn Key Health Policy & Procedure for the Oklahoma County Detention Center, # OCDC-G-06 "Inmates with Alcohol and Other Drug Problems"** states that inmates with alcohol or other drug problems (AOD) are assessed and properly managed by a physician or, where permitted by law, other qualified health care professionals.

The Clinical Institute Withdrawal Assessment Alcohol Scale Revised (CIWA-AR) and the Clinical Opiate Withdrawal Scale, or COWS, are nationally recognized, numbered scales designed to help clinicians tailor alcohol and/or opioid withdrawal treatment to individuals going through withdrawal. It is used in both inpatient and outpatient rehabilitation settings to determine the severity of opioid withdrawal and monitor how symptoms change over time during treatment.

The CIWA/COWS scores obtained for Ms. Gonzalez, when she would agree to an evaluation, show that her withdrawal symptoms were within the none to mild range of the scale (0-5). Throughout Ms. Gonzalez' period of withdrawal she never complained to anyone about thinking of harming herself.  This standard was met.

## Mental Health Services

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-F-03** – **"Mental Health Services"** states mental health services are available for all inmates who require them.

**Turn Key Health Policy & Procedure for the Oklahoma County Detention Center, # OCDC-G-04 "Mental Health Services"** states that mental health services are available for all inmates who require them.

Ms. Gonzalez was referred to see a Turn Key mental health professional at the time of her booking and was seen early the following week by the mental health clinician who obtained a mental health history and had her seen by the Turn Key psychiatrist the following day.  Based on her history and clinical presentation, the psychiatrist started Ms. Gonzalez on medications to treat her anxiety, depression, and report of nightmares.  These medications were started without delay and continued throughout her incarceration with monitoring and adjustment as needed. This standard was met.

In addition to the Turn Key mental health staff who cared for Ms. Gonzalez during her incarceration, she was assessed and tested by a Red Rock Behavioral Health Services Case Manager who was to use this information to have Ms. Gonzalez' name placed on a waiting list for a state treatment bed.  After Ms. Gonzalez' death, it was found that the employee from Red Rock Behavioral Health Services had not followed up regarding Ms. Gonzalez' placement and was subsequently terminated from employment.  Red Rock Behavioral Health Services is not affiliated with Turn Key Health Clinics, Inc.

## Continuity and Coordination of Care During Incarceration

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-E-09** – **"Continuity and Coordination of Care During**

*Pasqualetti (Gonzalez) v Turnkey*

**Incarceration"** states that patient medical, dental, and mental health care is coordinated and monitored from admission to discharge.

Ms. Gonzalez was provided with continuity of care throughout her incarceration from the time of booking until the emergency response after her hanging.  She had daily access to nursing personnel at each medication pass multiple times daily, and when she submitted requests for care to treat her dental complaints, muscular issues, seizure disorder, stomach upset, allergies, and immediately after an altercation on **January 8, 2019**.  All care provided to Ms. Gonzalez by Turn Key health professionals was appropriate and well documented in the electronic health record which was available to all subsequent treatment team members.  It was unforeseen at this encounter that Ms. Gonzalez had any suicidal intent.  This standard was met.

### *Medication Services*

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-D-02** – **"Medication Services"** states that medications are provided in a timely, safe, and sufficient manner.

**The Oklahoma State Department of Health, Title 310, Chapter 670, City and County Detention Facility Standards, 310:670-5-8(2) "Medical Care and Health Services"** states that prescription medications shall be provided to the inmate as directed by a physician or designated medical authority.

 Ms. Gonzalez was provided with prescription medications as ordered by authorized prescribing authorities and delivered by nursing professionals throughout her incarceration.  Medications were provided timely, safely, and in an appropriate manner.  This standard was met.

### *Nursing Assessment Protocols and Scope of Practice*

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-E-08** – **"Nursing Assessment Protocol and Procedures"** states that Nursing Assessment Protocols and Procedures are appropriate to the level of competency and preparation of the nursing personnel and comply with the relevant state practice acts.

**The Oklahoma Nurse Practice Act § 567.3a. Definitions,** defines:

"**Registered nursing**" means the practice of the full scope of nursing which includes, but is not limited to:

    a.  assessing the health status of individuals, families, and groups,
    b.  analyzing assessment data to determine nursing care needs,
    c.  establishing goals to meet identified health care needs,
    d.  planning a strategy of care,
    e.  establishing priorities of nursing intervention to implement the strategy of care,
    f.  implementing the strategy of care,

*Pasqualetti (Gonzalez) v Turnkey*

g.  delegating such tasks as may safely be performed by others, consistent with educational preparation and that do not conflict with the provisions of the Oklahoma Nursing Practice Act,
h.  providing safe and effective nursing care rendered directly or indirectly,
i.  evaluating responses to interventions,
j.  teaching the principles and practice of nursing,
k.  managing and supervising the practice of nursing,
l.  collaborating with other health professionals in the management of health care,
m.  performing additional nursing functions in accordance with knowledge and skills acquired beyond basic nursing preparation, and
n.  delegating those nursing tasks as defined in the rules of the Board that may be performed by an advanced unlicensed assistive person.

"**Licensed practical nursing**" means the practice of nursing under the supervision or direction of a registered nurse, licensed physician, or dentist. This directed scope of nursing practice includes, but is not limited to:

a.  contributing to the assessment of the health status of individuals and groups,
b.  participating in the development and modification of the plan of care,
c.  implementing the appropriate aspects of the plan of care,
d.  delegating such tasks as may safely be performed by others, consistent with educational preparation and that do not conflict with the Oklahoma Nursing Practice Act,
e.  providing safe and effective nursing care rendered directly or indirectly,
f.  participating in the evaluation of responses to interventions,
g.  teaching basic nursing skills and related principles,
h.  performing additional nursing procedures in accordance with knowledge and skills acquired through education beyond nursing preparation, and
i.  delegating those nursing tasks as defined in the rules of the Board that may be performed by an advanced unlicensed assistive person.

All Turn Key Health Clinic, Inc. nursing personnel worked well within the scope of the Oklahoma Nurse Practice Act as outlined above utilizing the appropriate physician approved protocol for Ms. Gonzalez' stated complaints.  This standard was met.

### *Emergency Services*

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-D-07 – "Emergency Services and Response Plan"** states that planning for emergency health care ensures that all staff are prepared to effectively respond during emergencies.  The facility provides 24-hour emergency medical, dental, and mental health services.

**The Oklahoma State Department of Health, Title 310, Chapter 670, City and County Detention Facility Standards, 310:670-5-8(5) "Medical Care and Health Services"** states that each facility shall have a plan and provide twenty-four (24) hour emergency medical and dental care.  Emergency plans shall at least include arrangements for:

*Pasqualetti (Gonzalez) v Turnkey*

1. The use of one (1) or more hospital emergency rooms or other appropriate health care facility,
2. The use of an emergency medical vehicle, and
3. An emergency on-call physician and dentist when the emergency health care facility is not located in a nearby community.

On **Tuesday, January 8, 2019**, when Ms. Gonzalez was found hanging in her cell, the emergency response was swift and appropriate.   Turn Key nursing personnel responded immediately and provided life-saving care until EMS arrived and assumed care of the patient. This standard was met.


**Summary of Opinions**

1. There were no barriers to accessing health care created by any Turn Key employee, policy, or practice.  Ms. Gonzalez was screened upon admission to the facility and provided with information on the facility's sick call process.  This standard was met.

2. The medical screening of Ms. Gonzalez was performed swiftly and appropriately upon this patient's admission to the Oklahoma County Detention Center.  This resulted in the patient being placed on withdrawal monitoring and a referral to a mental health professional.  This met the standard of care.

3. Ms. Gonzalez was started immediately on the withdrawal protocol monitoring daily through the typical withdrawal period when she would allow a nursing assessment. During this period, she showed no withdrawal symptoms and denied any suicidal ideation. This met the standard of care.

4. The care provided to Ms. Gonzalez throughout her incarceration at the Oklahoma County Detention Center was well within the standard of care and provided by nursing personnel working within their scope of practice utilizing appropriate physician approved nursing protocols.

5. The care provided to Ms. Gonzalez during her incarceration was documented appropriately in the electronic medical record and ensured that her care was well coordinated between the treatment team.

6. Ms. Gonzalez was provided with prescription medications as ordered by authorized prescribing authorities and delivered by nursing professionals throughout her incarceration. Medications were provided timely, safely, and in an appropriate manner.  This standard was met.

7. On **Tuesday, January 8, 2019**, when Mr. Gonzalez was found hanging in her cell, the emergency response was swift and appropriate.  This standard was met.

*Pasqualetti (Gonzalez) v Turnkey*

8. Based on my education and experience in the correctional health care setting, and review of the records, it is my opinion that Turn Key Health Clinics, Inc. nursing personnel provided appropriate care and treatment to Ms. Krysten M. Gonzalez, based on her presentation, their assessments, and the information she provided.  They unequivocally did not intentionally or recklessly fail to act with reasonable and appropriate care.

My opinions in this case are based on many years of education and experience in the correctional health field, and upon the documentation provided to me for review to date.  I reserve the right to supplement this opinion in the event additional documentation is provided in this matter.  My opinions herein are expressed within a reasonable degree of nursing certainty.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 21, 2024, in Mesquite, Nevada.

_____

Kathryn J. Wild, RN, MPA, CCHP-RN